IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ADIDAS AG and ADIDAS AMERICA, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| | ) C.A. No. _____ |
| v. | )<br>) **JURY TRIAL DEMANDED** |
| UNEQUAL TECHNOLOGIES COMPANY and MATSCITECHNO LICENSING COMPANY, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs adidas AG and adidas America, Inc. (collectively "Plaintiff" or "adidas") allege as follows:

## NATURE OF ACTION

1.   This is an action for declaratory judgment that U.S. patents are not infringed or are licensed, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 101, et seq., and for any other relief as the Court deems just and proper.

## THE PARTIES

2.   Plaintiff adidas AG is a corporation organized under the laws of the Federal Republic of Germany, with its principal place of business at Adi-Dassler-Strasse 1, 91074 Herzogenaurach, Germany.

3.   Plaintiff adidas America, Inc. is a corporation organized under the laws of Delaware, with its principal place of business at 5055 North Greeley Avenue, Portland, OR, 97217-3524 USA.

4. Defendant Unequal Technologies Company ("Unequal") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 10 LaCrue Avenue, Glen Mills, Pennsylvania 19342.

5. Defendant Matscitechno Licensing Company ("Matscitechno") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business at 143 Viburnum Drive, Kennett Square, Pennsylvania 19348.

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

7. This Court has personal jurisdiction over Unequal because it has issued, authorized or caused to be issued covenants not to sue applicable to litigation it initiated in this Court that should be declared to apply to adidas and has relied on this Court's discovery process to seek to discover information to assert claims of infringement against adidas.

8. This Court has personal jurisdiction over Matscitechno because it has issued, authorized or caused to be issued covenants not to sue applicable to litigation it initiated in this Court that should be declared to apply to adidas and has relied on this Court's discovery process to seek to discover information to assert claims of infringement against adidas.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400.

## THE PATENTS

10. On January 4, 2005, the U.S. Patent and Trademark Office ("PTO") issued U.S. Patent No. 6,837,812 (the "'812 Patent"), titled "Vibration Dampening Grip Cover For The Handle Of An Implement." The '812 Patent is attached hereto as Exhibit A.

11. On August 30, 2005, the PTO issued U.S. Patent No. 6,935,973 (the "'973 Patent"), titled "Vibration Dampening Material." The '973 Patent is attached hereto as Exhibit B.

12. On February 6, 2007, the PTO issued U.S. Patent No. 7,171,696 (the "'696 Patent"), titled "Athletic Clothing With Sting Reduction Padding." The '696 Patent is attached hereto as Exhibit C.

13. The '812, '973, and '696 Patents are collectively the "patents-in-suit." Matscitechno claims to be the owner by assignment of the patents-in-suit. Unequal claims to be the exclusive licensee of the patents-in-suit.

## GENERAL ALLEGATIONS

14. Reebok International Limited ("Reebok") is an affiliate of each of adidas America and adidas AG. Reebok, adidas America and adidas AG are in the business of selling footwear and apparel.

15. On or around July 29, 2015, Defendants initiated a patent infringement action against Reebok and asserted the patents in suit against Reebok. The action was filed in this District as Unequal Technologies Company et al v. Reebok International Ltd., CA No. 1-15-cv-00653 ("Reebok case"). A true and correct copy of the Complaint in that matter is attached as Exhibit D.

16. Defendants initially sought a preliminary injunction, contending that Reebok had infringed the patents-in-suit and were causing irreparable harm by offering for sale and selling certain coated Kevlar products. Defendants specifically alleged that Reebok (i) had touted its "multi-year trademark license agreement for the use of the DuPont™ Kevlar® and Dare Bigger™ trademarks" for use in at least the Reebok products, including the "Reebok Kevlar®

3

CrossFit collection" (Exhibit D, ¶36) and (ii) that "Reebok products incorporating coated Kevlar® are infringing the patents-in-suit" (*Id.*).

17. Reebok provided its noninfringement positions and other defenses to Unequal in or around August 7, 2015. Per the Court's order in the Reebok case, Reebok also provided expedited discovery in August and September, 2015. Thereafter, on or around September, 2015, Defendants withdrew their preliminary injunction motion against Reebok, although the Reebok case otherwise continued.

18. During the course of discovery in the Reebok case, Defendants sought discovery into not only Reebok products that used Kevlar® components, but also adidas products that contain Kevlar®. By way of example, on October 20, 2015, Unequal issued a corrected second set of requests for production that defined "Accused Products" to mean "any and all Reebok or adidas products that contain Kevlar." Exhibit E.

19. adidas AG and adidas America make, sell, offer for sale or import into the United States products that contain Kevlar®. For example, adidas sells a line of soccer cleats known as the "Freak x Kevlar® cleats" and another line of soccer cleats known as the adidas adizero 5-Star 5.0 x Kevlar® cleats. A true and correct copy of the adidas website concerning an exemplary Freak x Kevlar® cleat is attached as Exhibit F. As stated therein, Freak x Kevlar® cleats contain a "[t]op plate reinforced with DuPont™ Kevlar® for upgraded stiffness necessary for elite speed." *Id.* Similar to Reebok, adidas licensed the use of the Kevlar® trademark from DuPont. *See id.* ("Kevlar®, registered trademark of DuPont™ used under license."). The adizero 5-Star 5.0 x Kevlar® cleats likewise include a top plate reinforced with DuPont™ Kevlar®, and use the Kevlar® registered trademark under license.

20. On or about January 15, 2016, Defendants prepared and sent to Reebok a first covenant not to sue on the patents in suit. A true and correct copy of the first covenant not to sue executed by Defendants is attached as Exhibit G (hereafter "First Covenant").

21. The First Covenant stated that Defendants agreed to refrain "from commencing, causing, or permitting to be prosecuted any action in law or equity, against Reebok or any of its subsidiaries, divisions, related companies, affiliated companies," certain claims. Exhibit G, at 2. The claims encompassed included "any past, present, or future infringement of the patents-in-suit by the Reebok Accused Products or by any other product currently or previously made, used, sold, offered for sale, and/or imported into the United States by Reebok, or by any products that are not colorably different from the Reebok Accused Products or any other Reebok product currently or previously made, used, sold, offered for sale, and/or imported into the United States by Reebok." *Id.*

22. adidas AG and adidas America are each an affiliate of Reebok as described in the First Covenant. The First Covenant specifically applies to "any products that are not colorably different from" either (1) "the Reebok Accused Products" or (2) "any other Reebok product currently or previously made, used, sold, offered for sale, and/or imported into the United States by Reebok." *Id.* (emphasis added). Accordingly, the First Covenant expressly extended to adidas (an "affiliated company") and to adidas products (i.e. "any products") that were not colorably different from either the "Reebok Accused Products" or other Reebok products.

23. Reebok emailed Unequal to request a conference to discuss the covenant. Defendants, however, insisted that the First Covenant "is not a draft covenant. It is a final executed document" and requested Reebok to propose any revision for consideration. A true and correct copy of that correspondence is set forth in Exhibit H at 2.

24. Because it was unclear whether Defendants viewed adidas products that contain Kevlar® to be "not colorably different" from the two categories of Reebok products identified in the First Covenant, Reebok requested Defendants to modify the covenant to more expressly address adidas products. *Id.* at 1. Defendants responded by issuing another covenant a true and correct copy of which is attached as Exhibit I (hereafter, "Second Covenant.")

25. The Second Covenant attempts to narrow Defendants' commitment by applying only to "any Reebok products that are not colorably different from the Reebok Accused Products or any other Reebok product currently or previously made, used, sold, offered for sale, and/or imported into the United States by Reebok." Exhibit I. Defendants, indeed, stated in their forwarding correspondence that "we have also revised the covenant to make clear, in view of your inquiry related to Adidas, that the Covenant expressly excludes for the avoidance of any doubt, Adidas and its activities." Exhibit J.

26. adidas AG and adidas America have not infringed, and do not infringe, any claims of the patents in suit. As a result of the Defendants' actions described herein, a substantial controversy exists between the parties regarding the patents in suit, adidas AG and adidas America's products, the scope and applicability of the First Covenant to adidas AG and adidas America, and any alleged liability adidas AG and adidas America may have for any infringement of the patents in suit.

## COUNT I
**(Declaration that the First Covenant Applies to adidas and their Products)**

27. adidas realleges and incorporates herein by reference the allegations set forth above.

28. The First Covenant is a fully binding and enforceable covenant not to sue that applies to adidas AG and adidas America. As a fully binding and enforceable covenant, the First

Covenant applies to each and every adidas product that is not colorably different from the "Accused Reebok Products" or any other Reebok product existing before the First Covenant.

29. In light of Defendants' prior definition of "Accused Products" as encompassing products containing Kevlar®, adidas AG and adidas America additionally and alternatively seek a declaration that any of their products containing Kevlar® fall within the scope of the First Covenant.

30. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

31. A judicial declaration is necessary and appropriate so that adidas AG and adidas America can ascertain their rights regarding the First Covenant. adidas AG and adidas America accordingly seek a judicial declaration that (1) the First Covenant is enforceable and applies to any adidas products that are not colorably different from the Accused Reebok Products or pre-existing Reebok products and, alternatively, (2) the First Covenant is enforceable and any adidas products that contain Kevlar® are not colorably different from the Reebok Accused Products or pre-existing Reebok products.

## COUNT II
**(Declaration of Non-Infringement of the Patents in Suit)**

32. adidas realleges and incorporates herein by reference the allegations set forth above.

33. adidas AG and adidas America have not infringed and do not infringe the patents-in-suit. adidas's "Freak x Kevlar® cleats" and its adizero 5-Star 5.0 x Kevlar® cleats do not embody the inventions claimed in the patents-in-suit.

34. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

35. A judicial declaration is necessary and appropriate so that adidas AG and adidas America can ascertain their rights regarding the patents in suit. adidas AG and adidas America accordingly seek a judicial declaration that they have not infringed the patents in suit.

## PRAYER FOR RELIEF

WHEREFORE, adidas respectfully prays that this Court:

a. Declare that the First Covenant is fully enforceable and extends to any adidas products that are not colorably different from either the Reebok Accused Products or any pre-existing Reebok products.

b. Alternatively, declare that the First Covenant is fully enforceable and extends to any adidas products that contain Kevlar®, such as the adidas Freak x Kevlar® cleats or adizero 5-Star 5.0 x Kevlar® cleats, are not colorably different from either the Reebok Accused Products or any pre-existing Reebok products.

c. Declare that adidas AG and adidas America have not infringed the patents in suit.

d. Grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

adidas hereby demands a jury trial on all issues triable by a jury.

                        MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                        /s/ Jack B. Blumenfeld

                        Jack B. Blumenfeld (#1014)
                        Jeremy A. Tigan (#5239)
                        1201 North Market Street
                        P.O. Box 1347
                        Wilmington, DE  19899
                        (302) 658-9200
                        jblumenfeld@mnat.com
                        jtigan@mnat.com

                        *Attorneys for Plaintiffs*

OF COUNSEL:

Mitch Stockwell
KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street NE
Suite 2800
Atlanta, GA 30309
(404) 815-6500

Matias Ferrario
KILPATRICK TOWNSEND
  & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101
(336) 607-7300

January 29, 2016

9